Good morning, Chief Judge Colleton, and may it please the Court. In this case, the government made a liability determination in our favor that petitioners were unlawfully denied reimbursement for new electric grid facilities to the tune of hundreds of millions of dollars over the course of eight years, but it took the unusual step of denying us any remedy. Our clients paid for these power grid upgrades with a federally sanctioned promise of reimbursement, and that point deserves a little emphasis. FERC had to approve this whole reimbursement scheme ex-ante before it was even applied, or in this case, not applied. But the same agency that approved the reimbursement rule then refused to enforce it. The filed rate doctrine that was supposed to protect us from not getting paid was used against us to justify violating the very filed rate it was supposed to protect. That can't be the right answer. We ask the Court accordingly to vacate FERC's failure to consider remedies and send it back. Now, FERC's — The Southwest Power Pool, Your Honor, which is the membership organization at issue here, is based in Little Rock. Based in Little Rock, I see. Go ahead. So FERC's orders violate the Administrative Procedure Acts on multiple grounds. Now, first, as we explained in our brief, we think FERC's refusal to be pinned down on what exactly its legal theory is is grounds enough for this Court to vacate the orders. We have several competing interpretations in FERC's orders and in its brief, and we don't know to this day whether FERC merely chose to deny us our money or whether it felt like its hands were tied and simply could not. We raised that in our initial brief. FERC refused to answer it in its reply brief. So perhaps the Court will have better luck today than we've had so far determining what exactly FERC's legal position is. But we suggest, in accord with the FP&L decision at page 31 of our brief, that if the Court can't figure it out either, that alone is grounds to send the case back. Now, if you — even setting that aside, you want them to say whether they think they had discretion to grant the remedy and declined as a matter of discretion versus whether they thought their hands were tied by what, by the filed-rate doctrine? That's right. So if you read the orders, what they say, they say both. They say we are exercising, you know, we are at the zenith of our discretion in fashioning remedies and we just didn't have to. But then they also say sort of more often that this Section 171, which was the — just an administrative billing limitation provision, says we just can't. We're barred. Even if we wanted to, we couldn't, because that would enact some sort of further violation of the filed-rate doctrine. So therefore, your, you know, reliance on Attachment Z-2 necessarily fails. The problem with that — sorry, Judge Erickson, it looks like you're lost. I'm just a little bit trying to figure this out in my mind. Yes. Because they did say that, you know, the recent decision in Oklahoma gas out of the D.C. Circuit and our prior statements, which we made on a couple of different occasions, that we adhere to a strict, strict application of the filed-rate doctrine, making no exception for contract tort or equitable circumstances. And they would say the combination of those two things tied their hands. And they did say earlier on in the process that they chose not to exercise discretion. And I'm just trying to figure out how those two statements kind of dovetail. Or if you're right, that if they said — if here today they admit they have discretion, we should send it back and let them, like, explain their exercise of discretion in greater detail. If, in fact, they say they're bound, we should analyze our prior precedent in the light of whatever weight we want to give to Oklahoma gas and make our own decision. Right. So, a couple of things, Your Honor. First of all, you know, again, I think it's up to the Commission to explain what its rationale was. Now, I'm prepared to explain why both of them, which we think are wrong. But quickly, just a quick note on Oklahoma gas. To be clear, that waiver case was very narrow. The only issue with that case, FERC having granted the waiver and then having pulled it back and denied it, the question was, should FERC essentially put Humpty Dumpty back together again in that case before we proceed? And, of course, Judge Rau, even at oral argument at the D.C. Circuit, said, you may have a contract claim here. So that's really all that was at issue in Oklahoma gas was the waiver claim. That was an act of sort of rate-making. This case is entirely about the adjudicatory function that the Commission has. When we filed our complaints, and again, they found in our favor on the merits. So, if you liken this to a district court proceeding that bifurcates liability and damages, we have the liability finding in our favor. Commission says, SPP violated attachment Z-2, violated all of our contracts, and violated, and this is important, they also say that they violated the filed rate doctrine. They made a specific, separate finding, legal conclusion in the initial orders to that point. So, again, if they had said, well, Z-2 was violated, yes, but all these other things, I think all of that goes away when the Commission grants our complaint and says, SPP violated the filed rate doctrine. So you can't then come back to us and say, but because of the filed rate doctrine, we give you no relief for the violation of the filed rate doctrine. It just, it becomes circular. But the reason why why is it circular if the filed rate doctrine also has to take account of the billing limitation? So it does and did in the Oklahoma gas case. The important difference in this case is that we are not asking for that which 171 prohibits. So 171 says you can't backbill transmission customers. We're not trying to do that here. That ship has sailed. So that's what the Oklahoma gas. How are you going to get the money? So we're going to, well, that, again, we have, we don't have the remedy phase. It never happened here. I would submit to you, though, we pled a number of. But isn't FERC saying the only way you can get the money is to get it from the customers and we can't backbill? Yeah. And that's where FERC is wrong. So FERC's assumption the entire time was if you were going to try to apply Z2 and the tariff and just apply it retroactively, which is what the waiver case was about, you're absolutely right, Chief Judge Colleton, that you'd have to then say, well, 171 being part of the filed rate sort of blocks the operation of the whole thing. This, and in the adjudicatory contract phase, the only question is we know that they violated our contracts and violated the tariff. So we are, we believe we're owed the money. There's a separate question about where SPP gets it. Now, FERC says, well, there's a practical limitation. SPP is a nonprofit. Well, nonprofits take on liabilities all the time. They're sued. They get tax bills they don't expect. And they have to assess their members. So we, Section 8.4, which we discussed in our brief of the SPP bylaws, is broad authority for SPP to assess its members for any liabilities or costs that they incur that aren't otherwise covered by their previous assessments or rates. So we are not asking the Commission to order SPP to charge transmission customers. And again, two separate universes of entities. Those transmission customers that paid for these rates during the historical period, under Oklahoma Gas, are going to get their money back. They're going to get made whole. The question is, are we going to get a substitute liability in place of that refund against SPP for its contract and filed rate violations? What if FERC is right that 8.4 is narrower than what you say? That it only allows for recovery of what they call tariff administration services and not FERC? That's the sort of relief that you're seeking here. Then would you be in the position where you're back to trying to get, bill the customers for the remedy? Well, not necessarily. So, well, first of all, we think it's wrong. And that's part of our cause today is that FERC, you know, in its very cursory treatment of 8.4, came to the wrong conclusions. In fact, we think if there's actually a remedy phase here, that's exactly the type of issue that could be explored, whether and to what degree SPP has funds on hand, you know, might be able to issue debt, what exactly are the limits of its authority and its obligations to its members under 8.4. But I would also suggest that FERC routinely permits what are called Section 205 filings, rate change filings, where the public utility at issue, and SPP is a regulated public utility, comes to the Commission and says, I need to charge customers or I need to charge my members. I need the government's authority to do that. And they grant it or don't grant it, depending on the circumstances. There's all sorts of avenues that SPP could use here. They're left entirely unexplored because FERC at every turn merely threw up Section 171 and said, can't do it, can't do it. Well, again, 171 only applies to transmission customers who took service over these facilities during the historical period. You can't back-bill them. We get that now. That's the Oklahoma Gas decision. But you think they can bill them prospectively to make up for the amount they didn't recover back-billing? I wouldn't use the word prospectively. It's a term of art on the Federal Power Act because it assumes — You're saying you can bill these same people going forward an increased amount because you just said SPP can apply to do that sort of thing if they need money. Yes. So I would think about — As a practical matter, as I understand what you're saying, they would collect from the same people an additional amount going forward to make up for the amount they're not allowed to get under 171. Yes. And we explained, Your Honor, how SPP as a public utility may also incur, for example, penalties for violations of the Commission's regulations or reliability standards. Those penalties can be a million dollars plus per violation per day. Those types of liabilities can absolutely be visited on SPP. SPP is an 800-employee organization with an operating budget of $270 million. It has — it absolutely is not immune to taking on financial liabilities. In fact, it routinely issues debt to fund its operations outside — entirely outside of the pass-through function that SPP explains in its brief. So that's really not at issue. I mean, the fact is, SPP is just a membership organization. Membership organizations, again, if they get a tax bill they weren't expecting or they have to build a new building, what do they do? They assess their members. That's — it's really no more complicated than that. In fact, I was reminded in preparation for this argument that one of our petitioners itself is a nonprofit. And as it was explained to me, if they get a liability or a judgment against them that they weren't expecting, they just have to figure it out. And we would respectfully suggest that SPP certainly has that same ability. So again, our bottom line here, Your Honor, is we think FERC was wrong to just throw up relief. There should have been, at a minimum, a full exploration of potential remedies here. And so FERC was wrong, we believe, on the facts and the law. I see I'm close to my rebuttal time, so I'd like to reserve the remainder. Very well. Thank you for your argument. Ms. Banta, we'll hear from you. Good morning. May it please the Court. I'm Carol Banta for the Federal Energy Regulatory Commission. And I would like to share three minutes of my time with Mr. Bennett, representing the Intervenor Southwest Power Pool, the regional operator in this case. All right. The clock will keep running. So if you want to do that, you'll just have to cease when it gets down to three. But go ahead with your argument. Sure. A lot to follow up on, in particular, about Oklahoma Gas and Electric. But I want to actually start with the Towns of Concord case from 1992, a key case from the D.C. Circuit. I do want to point out, there's a key phrase in that case. We cite it as one of our key cases in two of the statements, two of the issues presented. 955 F. Second 67. And at page 71, note 2, there's a statement. The rule against retroactive rate increases prohibits the Commission from adjusting current rates to make up for a utility's over- or under-collection in prior periods. I just want to point out, that was quoted verbatim in a D.C. Circuit case called Consolidated Edison, which this Court quoted in Central Iowa. So I can draw a direct line back to this Court itself has looked to the principles in Towns of Concord. So I want to point out, again, this is a 30-year-old case that's key on the filed rate doctrine. Page 73, that Court actually addressed this idea of having a right and being entitled to a remedy. And the Court rejected it. This argument assumes that the right ceases to exist unless it is backed up by a remedy. And the case cannot be decided on any such theory. The Petitioners in that case possess only the, quote, unquote, rights. The Federal Power Act confers no more, no less. And then in that case, the Court went on to agree that the Commission had discretion not to provide a remedy, even where it had found a violation of — I believe it was a tariff violation. Certainly, it was an under — it was an over-collection in a prior period, and the So I just want to start with the — I don't want to say first principles, because the first rate — the filed rate doctrine is well over 100 years old. But the key case there, which this Court has looked to that principle, directly addressed this idea that you can have a tariff violation, and the Commission still has discretion not to grant a remedy. And that brings me to Oklahoma Gas and Electric. I would strongly dispute the argument that this is a narrow case. The Court actually touched on a number of issues that are relevant to this case. It touched on the plain — it actually found it to be a plain language tariff, so it wasn't even deferring to the Commission's interpretation. And you can't divorce the billing limitation in Section 7.1 from the — the — actually, it preexisted Attachment Z2. And the Court said directly in — at page — it's 11F4, 829, that the Commission's interpretation gives effect to both tariff provisions and reads them harmoniously. It points out that Section 7.1 came first a couple pages earlier, at 827, 828. It also touches on the question of the Commission's action in Section 309. To understand the Commission's — and I apologize. I keep using the FPA sections instead of the U.S. Code sections. I believe it's 16 U.S.C. 825H is Section 309. But in this earlier proceeding that Oklahoma Gas was speaking to, the Commission had used the same language, where it said, yes, we have all these amounts that — that were not billed in the historical period, and we can't do anything about that now because of the Filed Rate Doctrine. Having decided that under the Filed Rate Doctrine, the Commission said — and I believe this is in — I didn't bring it up with — oh, yeah, I did. The — the Waiver Remand Order, that's the 166, 61, 160 from 2019, at paragraph 57, that's where the Commission — I don't know if it's the first place it said it, but it clearly said the same thing it said in this case. We declined to exercise our authority under FPA Section 309 to basically do the same thing we just said you can't do under — we can't do under the Filed Rate Doctrine. Exercising our authority under FPA Section 309 in this instance would be inappropriate. Well, in Oklahoma Gas — What was the paragraph number? Oh, I'm sorry. 57. All right. Go ahead. And in Oklahoma Gas, the Court echoed that same language and affirmed it without parsing — I think that the Court concluded that it was a discretionary, because if we look at page 829 going on to — oh, I'm sorry. That's not it. Page 832. It's the Roman numeral III part of the opinion. In the second paragraph, the Commission may craft a variety of remedies under Section 309. The Filed Rate Doctrine, however, limits that remedial authority, and it cites a few cases, and it says once FERC determined — we don't need this language — it says FERC stated here it would be, quote, inappropriate, unquote, to exercise equitable authority here because the initial waiver had violated the Filed Rate Doctrine. Given FERC's broad remedial discretion, that decision was not arbitrary and capricious. So the Court did apply arbitrary and capricious discretionary review, even though it had just said the Filed Rate Doctrine limits that remedial authority. Well, that was to discretion exercised on a different question, though, wasn't it, regarding the — No, it was the same question because in that case, after the Commission — you know, back billing, and then the Old Dominion case said waiver authority, the Commission's waiver authority is still subject to the Filed Rate Doctrine. You can't do it. So the Commission had to adjust its thinking because it understood that the D.C. Circuit in Old Dominion was applying, as courts do, a very stringent interpretation of the Filed Rate Doctrine. So we come out with the waiver remand orders. And one of the arguments there from the Petitioners here today is, don't make us — don't unwind it and make us pay it back. Let us keep the money. Which, by the way, I can give you a number of page sites where they said the same thing in the complaint here. So the idea that this is an entirely different case with an entirely different theory, they're asking for the same thing. They received a bunch of refunds under the incorrect decision where the Commission was letting SPP do the back billing and the back paying, and they don't want to have to give the money back. So they filed these complaints saying, please, just let us keep the money and let SPP come up with it somewhere else. So in paragraph 57, that is where the Commission was saying, it would be inappropriate for us to let you keep the money after we've already concluded that you never should have had this money because of the Filed Rate Doctrine. So it is the exact same finding under Section 309. But my point is that the Court, having affirmed that with this language, saying, first, the Filed Rate Doctrine limits the remedial authority, but at the end of the paragraph, saying, given FERC's broad remedial discretion, it was not arbitrary and capricious, then the Commission, understandably in this current proceeding, hewed to the same language that had been affirmed by the D.C. Circuit. And the D.C. Circuit hadn't parsed out the question that Petitioners did not, in fact, raise on rehearing, so the Commission didn't explore it further in its rehearing order because they hadn't said which you say. The Commission was rightly saying, well, we said X, the D.C. Circuit adopted our language and affirmed X, so we're going to stay with that formulation because it adheres to what the D.C. Circuit has said. I do want to point out, just as a side note, on the stringent application of the Filed Rate Doctrine, just because many of the cases are from the D.C. Circuit, it's nothing unique to the D.C. Circuit. Again, the Filed Rate Doctrine goes very far back, and this Court has cited some of its cases. But I would note that the Third Circuit applied the Filed Rate Doctrine very stringently two days ago in a decision. I can give you the citation. It's not something directly relevant to this case. It's just an illustration of how multiple circuits treat this the same way. In a case called PGM Power Providers Group v. FERC that came out on Tuesday, it is published, but it doesn't have its F-4th cite yet. So it is 2020. All right. Well, you can send us a letter if you think it's relevant. Sure. What about the argument that? I just do want to say that that Court cited Old Dominion and Oklahoma Gas very heavily to discuss those to a great extent. I'm sorry, Your Honor. Yeah. Well, do you want to address this question whether a remedy against SPP would be different than the remedy that FERC declined in the waiver cases? Well, it would be the — our position is that it is the — they want the same thing, because they wanted the back payments and initially got that. And then after Old Dominion, the Commission realized that's not sustainable. We were wrong. We got it wrong. We're going to adjust to what we were told by Old Dominion. And we're going to unwind those back payments. You have to give those back. Those transmission customers never should have been billed for that money. And even in that proceeding, the upgrade sponsors, the petitioners here said, don't make us pay the money back. Let us keep the money because we were owed that money. And that was exactly what the filed rate doctrine had said. It wasn't billed at the time. It wasn't billed within the period that it had to be under the tariff. So we can't do the back billing, again, the language from Towns of Concord, that we can't go back and adjust the rates now to make up for what should have been collected then. Everyone agrees it should have been collected then. But with the billing limitation in the tariff, it can't be now. And so it is the same issue. They're still looking for another way to keep the money. So the Commission reasonably concluded that we are looking at the same relief. It is something that we can't provide consistent with the filed rate doctrine. And in keeping with the Oklahoma gas, it would be inappropriate for us to end run the filed rate authority or the filed rate doctrine using our equitable authority. This may be a very simple question, but it may not even be relevant. But is there any way so SPP can adjust the rates, correct? Is there any other way for it to assess or charge its members? Prospectively. I mean, when we're talking about the provisions they have to cover things like reliability, those are in the tariff. They have already put a provision in the tariff, putting everyone on notice that the members of SPP could be responsible for those amounts going forward. What these petitioners want is to put something in the tariff now that says, we're going to make you responsible for that back billing we couldn't do in any other way. Setting aside the fact that attachment Z2 of the tariff always said that the money for these credits is going to come from the customers that use it, the exact customers that Oklahoma Gas confirms that we cannot bill for the back amounts. We can't turn the back billing into a present number by putting something in the tariff now telling some other group who had nothing to do with it, I don't know, but not those customers, some other customers or members, we're going to put something new in the tariff and say, you're responsible now for the amounts from 2014. It's the epitome of back billing that's barred by the filed rate doctrine. And I think Mr. Burnett can speak more to that, and I do need to cede to him in a few seconds. But I believe I made the point that I had no time. All right. Very well. Then we'll hear from Mr. Burnett. Thank you for your argument. Thank you. You may proceed. Good morning, Chief Judge, judges, and may it please the Court, Matt Burnett for Southwest Power Pool and the intervenors in this case in support of FERC. I'd like to start with Mr. Jones's reference to Section 8.4 of the SPP bylaws. Mr. Jones mischaracterizes what that provision entails. For starters, that provision involves SPP's administrative costs to operate SPP's transmission system oversight and markets. It does not involve the recovery of costs for transmission facilities. Those costs are recovered pursuant to the tariff that's at issue here, attachment Z2 and other provisions of the tariff. So there's nothing in Section 8.4 that would give customers notice that they would be on the hook for attachment Z2 charges for transmission facilities that were built. In addition, Mr. Jones overstates the breadth of what Section 8.4 involves. If you look at page 459 of the appendix, this is one of our answers to the EDF et al complaint. We quote the language of Section 8.4, which says that cost recovery under 8.4 is only from load eligible for service, but not currently taking network service under the tariff. This is a very small subset of the total load in SPP. So you're talking not only about imposing these costs on customers that had no notice that they would be paying these costs, but you're, sorry, the petitioners are proposing to impose these costs on a very small subset of the SPP footprint. It's unfair to do that. It's, they lack notice of that requirement. And so that's not an appropriate vehicle through which to recover these costs. You know, FERC looked at the various methods that, I'm sorry. Alito, it just strikes me that you're arguing it's unfair. I think the other, your friends on the other side would make exactly the same claim. And I thought we were here saying, suggesting that, you know, equity is not playing a role here. Maybe that's more of a comment than a question. But I mean, that's one of my struggles on this case, that equity seems to play no role whatsoever in our analysis. I think that's true, Judge Kovas. And that's exactly what the D.C. Circuit found, that regardless of the equities in this case, and in the D.C. Circuit, to be frank, we were on the petitioner's side. We sought the waiver. We didn't think at the time that Attachment Z-2 was being developed, or the procedures were being developed, that we were actually violating the tariff at that point, because Attachment Z-2 doesn't say when those costs are going to be billed. It wasn't until FERC, in its remand order, and then the D.C. Circuit told us, no, Section 1.7.1 says you must bill, you know, for one month. The charge is the following month. And so, you know, we lost that there. But you're correct. Equity does not play a role here. And when I mentioned the prospect of fairness, what I was really talking about was notice. There's no notice to these customers under Section 8.4 of the bylaws that they're going to actually have to pay transmission costs. Just one more quick point, if I may. Mr. Jones also mentioned that SPP can be sued. That's certainly true. SPP can be sued under its, you know, rental agreement, or software licensing agreements. But none of those agreements are actually under the filed rate doctrine. They're just typical agreements that a business enters into as a standard matter, of course. The difference here is the charges at issue are actually subject to the filed rate, which, as the D.C. Circuit found, was not only attachment Z2, but also Section 1.7.1. I've exceeded my time. I appreciate your time today. Thank you. All right. Very well. Thank you for your argument. We'll hear a brief rebuttal. Mr. Jones. Thank you, Your Honor. A couple of things on rebuttal. First of all, I admit to remaining quite dizzied as to what the Commission's position actually is here. I'll just discuss the discretion aspect in just a moment. I would urge the Court, if they have not read Section 8.4, the single paragraph that it is in the bylaws talking about the ability to assess members for, quote, all costs not otherwise collected within the performance of SPP's functions. It's pretty facially clear. The most important part, though, in contrast to what Mr. Bonnett represented, it says the monthly assessment shall be assessed on each member. We are not trying to back-bill transmission customers, which in the Venn diagram of this case is the smaller circle. Members are the larger circle. There are members that are not transmission customers who took service over these facilities. Those customers, to give effect to the Oklahoma gas decision, are going to get their money back. What we are asking for is to replace that with an assessment or some other form of remedy like the assessment to give effect to our contract rights and our tariff rights under the filed rate doctrine. The sum total of the two arguments we just heard seems to be that they think the way that the Commission wins this is to equate the relief we're asking for here to the relief we asked for in Oklahoma gas, and they are different. To be clear, we did say in our complaints we want to keep the money we've already received when the waiver was granted before it was rescinded. Those complaints were filed before the D.C. Circuit ruled in Oklahoma gas, so it's perhaps an imprecise description of the relief we're asking for. Yes, of course, the simplest thing is if we just keep the money. If we're going to actually trace the dollars, that money has to go back, as I customers hold, that liability to us would be replaced with one of the same amount. So, again, we are asking for different relief from a different set of entities that are not customers, so this whole business about the filed rate doctrine being somehow violated I don't think holds much water. And I would point the Court to... If you're asking for different relief, you mean the complaint asked for the same relief, but you're switching now? Not at all, Your Honor. The complaint did use the words, we should keep our money. But, again, the complaint at that point in time, the D.C. Circuit hadn't ruled. I understand. Right? And the Commission hadn't... So you thought then that you could get the same money. Well, it's we thought that was shorthand essentially for being made whole for the historical period. So, to be clear, this case has always been separate. The Commission itself, this is paragraph 97 at page 1251 of the appendix in the Cimarron order, the Commission denied arguments from the other side saying there's race judicata or claim preclusion issues. It's the same case. The Commission said, no, no, no, no. We're going to hear this case. It is not claim precluded. There's no race judicata. It is a separate legal question, a contract claim, a tariff claim against SPP. Is the Commission acting in its adjudicatory function, not the ratemaking function that it was issued in the waiver case? Different case, entirely different relief with recourse to a separate entity, a group of entities. With that, I see my time has expired. We would ask the Court to vacate and remand. Very well. Thank you for your argument. Thank you at all, Counsel. The cases are submitted and the Court will file a decision in due course. Steve, you take 10? The Court will be in recess for 10 minutes and then we'll resume with case number 4.